SELDEN H. HARLOW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Harlow v. Commissioner
Docket No. 6888-82.
United States Tax Court
T.C. Memo 1984-393; 1984 Tax Ct. Memo LEXIS 279; 48 T.C.M. (CCH) 661; T.C.M. (RIA) 84393; July 30, 1984. Selden H. Harlow, pro se. Lynn C. Washington, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies of $6,250 and $7,556 in petitioner's Federal income tax for his 1978 and 1979 taxable years, respectively. The issues for our decision are: (1) whether an executed written separation agreement as defined by section 71(a)(2) [1] existed between petitioner and his spouse during the taxable years in issue, so as to permit the deduction of certain payments made by petitioner to this spouse as alimony pursuant to section 215; and (2) whether petitioner is entitled to *280 deductions for rental losses on property located in Smithfield, Maine. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner was a resident of Lakeland, Florida as of the date of trial and at the time the petition in this case was filed. For the years 1978 and 1979, petitioner filed his Federal income tax returns with the office of Internal Revenue Service in Atlanta, Georgia. Petitioner designated his filing status on these returns as "married filing separate return" and listed Helen C. Harlow as his spouse. At all times since November of 1976, petitioner and his wife, Helen C. Harlow, have lived separate and apart. During the taxable years 1978 and 1979, petitioner was neither divorced from his wife nor legally separated from her under a decree of separate maintenance. In addition, Mr. Harlow was not under any obligation pursuant to a court order to make any monetary payments to his wife for her support or *281 maintenance. In February of 1977, Selden Harlow wrote a letter to his wife in which was described certain payments the petitioner intended to make to her. [2] During 1978 and 1979, Mr. Harlow made the payments as stated in his letter (i.e., $1,500 per month). The money was deposited into a checking account which was held jointly by petitioner Selden H. Harlow and his wife Helen C. Harlow at all relevant times. Mrs. Harlow did not agree to the terms of the letter from the petitioner. She did not sign the letter and has never written to Mr. Harlow stating that she would accept the money in release of his obligations which flow from the marital relationship. Mrs. Harlow used the money to pay household expenses. On December 29, 1980, Mrs. Harlow filed a petition for temporary support in the Probate *282 Court of Middlesex County, Massachusetts. The Probate Court issued a temporary order requiring the petitioner to pay "his spouse" $450 per week for "her support." On January 11, 1978, petitioner and his spouse transferred to their children by quitclaim deed all of their interest in a rental property located in Smithfield, Maine. Mrs. Harlow paid the operating expenses on the Smithfield property from rental income, her earnings and personal loans during the years in issue. Mr. Harlow did not produce any documentation showing that he incurred any losses from the operation of the Smithfield property during 1978 and 1979. In the notice of deficiency dated December 28, 1981, respondent disallowed petitioner's claimed deductions of $20,800 for alimony payments in each of the taxable years 1978 and 1979 and, accordingly, increased petitioner's taxable income by that amount for both taxable years. [3]
OPINION The first issue for our consideration is whether *283 petitioner is entitled to deductions for alimony payments made to his wife during 1978 and 1979. Petitioner bears the burden of proving error in respondent's determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Pursuant to section 215, a person is entitled to a deduction for alimony payments if the spouse receiving the payments is required by section 71 to include the payments in gross income. Section 71 provides in pertinent part as follows: [4]
SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) GENERAL RULE.-- * * * (2) WRITTEN SEPARATION AGREEMENT.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments * * * received after such agreement is executed which are made under such agreement and because of the marital or family relationship * * *. The *284 precise question presented by the instant facts is whether the February 17, 1977 letter sent by petitioner to his spouse qualifies as a "written separation agreement" for purposes of section 71(a)(2). After carefully examining the draft letter introduced into evidence, we conclude that it does not fulfill the requirements of the statute. The letter states in relevant part: As far as current income and liabilities are concerned, I agree to pay you $1500.00 per month on a regular basis and you will be responsible for the mortgage payments on the Winchester and Smithfield property, the car loan payments and the regular household bills. * * * I agree that this disposition of current income will continue as long as we are separated and as long as I am gainfully employed at a salary equal to or better than my present salary * * *. At best, this letter (which was signed only by petitioner) was only a unilateral offer to make payments for the support of his wife and the property they owned together. Estate of Hill v. Commissioner,59 T.C. 846, 856-857 (1973). There was no meeting of the minds or agreement between the parties. [5] In fact, Mrs. Harlow (whom we found *285 to be a credible witness) testified that she received the letter from her husband on February 20, 1977, approximately two months after they separated. She stated that while they did meet at a restaurant they did not discuss the terms of the letter as "[t]here was no climate for negotiations." Additionally, petitioner was a professional person with some experience in professional contracts, and it is doubtful that he would have entered into any contract on this basis dealing with a matter of real importance. A unilateral written statement by a party stating that he is willing to pay his spouse certain sums for her support clearly does not meet the statutory requirement of a written separation agreement. In addition, Mrs. Harlow's acceptance of the stated payments under these circumstances and their use for her support does not transform the unilateral offer into a bilateral agreement. [6] Mrs. Harlow had been a housewife for 25 years and it does not appear that she had any alternative. We hold that petitioner has failed to prove that he made the payments to his wife pursuant to a written separation agreement. As such, these amounts are not deductible as alimony under section 215. *286 The final issue is whether Mr. Harlow is entitled to a deduction for rental losses incurred from the operation of rental property in Smithfield, Maine during 1978 and 1979. Again, petitioner bears the burden of proving entitlement to the deduction. Rule 142(a), supra. Petitioner has utterly failed to meet that burden. No testimony or records of the income or expenses associated with the property were presented at trial. In addition, petitioner and his spouse transferred their interests in the Smithfield property to their four children by quitclaim deed on January 11, 1978. Therefore, Mr. Harlow was not legally obligated to pay the operating expenses and is not entitled to a deduction for such expenses. Cf. Cramer v. Commissioner,55 T.C. 1125, 1130 (1971). Moreover, Mrs. Harlow testified that the money she received from her husband was not sufficient to pay all the expenses on the marital home, the household bills and the Smithfield property expenses. She used her own income, a personal loan and rental *287 income from the Smithfield property to pay the expenses on that property.Thus, petitioner has failed to meet his burden of proving entitlement to such deductions. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Only a draft of this letter has been introduced into evidence. Although the parties stipulated that the letter designated certain payments as alimony, we note that the draft letter does not use the term alimony↩ but rather characterizes the payments as a "disposition of current income [which] will continue as long as we are separated and as long as I am gainfully employed."
3. However, respondent allowed an additional deduction for two exemptions in each of the taxable years as well as additional itemized deductions of $7,594 in 1978 and $5,464 in 1979 for interest and taxes on the marital home.↩
4. As petitioner was neither divorced nor legally separated from his spouse and did not make any payments to her pursuant to a court decree, subsections (a)(1) and (a)(3) of section 71 have no application.↩
5. See Saniewski v. Commissioner,T.C. Memo. 1979-337↩. 6. See Greenfield v. Commissioner,T.C. Memo 1978-386↩.